2016 COA 21

**The PEOPLE of the State of Colorado, Petitioner–Appellee,**

**IN the INTEREST OF K.B. and M.B., Children,**

and

**Concerning A.B. and J.B., Respondents– Appellants.**

**Court of Appeals No. 15CA1254**

Colorado Court of Appeals, Div. V.

Announced February 11, 2016

Patrick Coleman, County Attorney, Garrett Forsgren, Special County Attorney,

Grand Junction, Colorado, for Petitioner–Appellee.

James E. Plumhoff, III, Guardian Ad Litem.

Rennard E. Hailey P.C., Rennard E. Hailey, Grand Junction, Colorado, for Respondent–Appellant A.B.

Leigh Coleman Tayler P.C., Leigh Coleman Taylor, Grand Junction, Colorado, for Respondent–Appellant J.B.

Opinion by JUDGE RICHMAN

¶ 1 In this dependency and neglect proceeding, A.B. (mother) appeals from the judgment terminating the parent-child legal relationship between her and her children, K.B. and Ma.B. J.B. (father) appeals from the judgment terminating the parent-child legal relationship between him and his child, Ma.B.

¶ 2 We are asked to consider whether a treatment plan that does not address safety concerns about domestic violence that were present from the beginning of the case is nevertheless appropriate based on services that were ultimately provided. We conclude this presents a question of fact that must be considered by the trial court at the termination hearing. We therefore affirm the judgment with respect to father, vacate the judgment with respect to mother, and remand the case to the trial court for further findings.

I. Mother's and Father's Treatment Plans

¶ 3 In March 2013, the Mesa County Department of Human Services (the Department) opened a dependency and neglect case concerning sixteen-year-old K.S., thirteen-year-old Mi.B., eleven-year-old K.B., and nine-year-old Ma.B. The Department alleged that mother and father frequently fought; father yelled at the children, called them names, and physically abused them; Mi.B. had threatened one of his sisters with a knife after an argument; and K.S., who had significant physical disabilities due to cerebral palsy, was not receiving the physical therapy that she needed. M.B. II, father of the three older children, was incarcerated when the petition was filed and remained incarcerated for much of the time the case was open.

¶ 4 Adjudication was deferred with respect to mother and father, and treatment plans were adopted for both. Mother's treatment plan required her to

- be financially responsible for her portion of the treatment plan, based on her ability to pay;

- provide releases of information for service providers and others as deemed appropriate by her case manager;

- contact her case manager every month to discuss needs, problems, status, and progress made on the treatment plan;

- inform the Department within seven days of any move and provide her new address and telephone number;

- comply with the treatment plan and advise the Department of steps taken in compliance and how she was incorporating new skills and recommendations in her everyday life;

- not remove the children from the county without approval of the Department's caseworker and the children's guardian ad litem (GAL), and not relocate out of Colorado with the children without the approval of the court;

- be available to consent to any educational needs of the children;

- allow the Department and the GAL to make announced and unannounced home visits at reasonable times;

- maintain a residence that met the needs of the children; and

- actively participate in and positively engage in a services assessment with a Department-approved evaluator and follow all reasonable recommendations including but not limited to substance abuse treatment, mental health treatment, parenting classes, etc.

Father's treatment plan was the same.

¶ 5 From time to time thereafter, mother's and father's treatment plans were modified. Among other changes, both parents' treatment plans were amended to require them to actively participate in individual therapy with

a treatment provider approved by the Department.

¶ 6 Conflict between mother and father continued, and in August 2013, the children were removed from the home because of renewed concerns about domestic violence and threats by father. In October 2013, the deferred adjudication was converted to an order of adjudication.

¶ 7 In December 2014, after nearly two years of efforts to address the problems facing the family, the Department filed a motion to terminate the parent-child relationships between each of the parents and the two younger children.

¶ 8 Finally, in July 2015, after a three-day hearing, the court granted the motion to terminate parental rights, and this appeal followed.

## II. Mother's Treatment Plan

¶ 9 Mother contends that the record does not clearly and convincingly support the trial court's finding that her treatment plan was appropriate. Specifically, she notes that although there was evidence from the beginning of the case that domestic violence was a feature of the relationship between her and father, no domestic violence counseling or other treatment was offered to her, nor was she ever told that she should separate from father. We conclude that further findings on this issue are needed.

¶ 10 The statutory criteria for termination pursuant to section 19–3–604(1)(c), C.R.S. 2015, require that for the trial court to terminate parental rights, the petitioner must establish by clear and convincing evidence that an appropriate treatment plan approved by the court has not been successful in rehabilitating the parent, the parent is unfit, and the conduct or condition of the parent is unlikely to change within a reasonable time. *See* § 19–3–604(1)(c)(I)–(III); *People in Interest of A.M.D.*, 648 P.2d 625, 634–35 (Colo.1982); *People in Interest of S.N–V.*, 300 P.3d 911, 915 (Colo.App.2011).

### A. An Appropriate Treatment Plan

■ ¶ 11 The purpose of a treatment plan is to preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required intervention into the family. *People in Interest of M.M.*, 726 P.2d 1108, 1121 (Colo.1986); *People in Interest of D.G.*, 140 P.3d 299, 304 (Colo.App. 2006).

¶ 12 The safety concerns identified during the assessment of the family's needs "will be the basis for developing treatment plan objectives," Dep't of Human Services Reg. 7.301.231.B, 12 Code Colo. Regs. 2509–4, and the child protection services offered to the family are to be based on the "safety and risk issues" that threaten the child's safety. Dep't of Human Services Reg. 7.202.1.B, 12 Code Colo. Regs. 2509–3.

¶ 13 Thus, for a parent's "treatment plan" to be "appropriate," it must be "approved by the court" at a dispositional hearing and, based on the risk assessment, it must "relate[ ] to the child's needs" and provide treatment objectives that are "reasonably calculated to render the particular respondent fit to provide adequate parenting to the child within a reasonable time." § 19–1–103(10), C.R.S. 2015; *see S.N–V.*, 300 P.3d at 915; *see also* § 19–3–508(1)(e)(I), C.R.S. 2015 (providing that unless the proposed disposition of a dependency and neglect case is termination of the parent-child legal relationship, the court "shall approve an appropriate treatment plan"). The Federal Adoption Assistance and Child Welfare Act likewise requires the development of a written "case plan" for "each child receiving foster care maintenance payments." 42 U.S.C. § 671(a)(16) (2012); *see* § 19–3–208(2)(b)(1), C.R.S. 2015 (identifying "individual case plans" in a dependency and neglect proceeding).

■ ¶ 14 In determining whether a treatment plan is appropriate, the court must consider whether the plan's objectives adequately address the safety concerns identified during the assessment of the family. But, the fact that a treatment plan was not successful does not mean that it was inappropriate, for in many cases it is virtually impossible to devise a plan which will guarantee a parent has become fit. *M.M.*, 726 P.2d at 1121–22.

## B. The Parent is Unfit

¶ 15 To determine whether a parent is unfit, the juvenile court must consider whether "[r]easonable efforts by child-caring agencies ... have been unable to rehabilitate the parent or parents." § 19–3–604(2)(h). "Reasonable efforts" means "the exercise of diligence and care" to reunify a parent with his or her children, and it includes "[s]ervices provided by a county or city and county in accordance with section 19–3–208." § 19–1–103(89); *S.N–V.*, 300 P.3d at 915. Services "as determined necessary and appropriate by individual case plans" under section 19–3–208 include, among other things, the following:

- screening;
- assessments;
- home-based family and crisis counseling;
- information and referral services to available public and private assistance resources;
- visitation services for parents with children in out-of-home placement; and
- placement services including foster care and emergency shelter.

§ 19–3–208(2)(b). Other services, such as family counseling and other family support services, must be provided if funds are available and such services are deemed necessary and appropriate. § 19–3–208(2)(d)(VII).

¶ 16 Thus, the objectives of a parent's treatment plan and the services ultimately provided to meet these objectives are inextricably linked. As the division in *S.N–V.* explained,

in considering whether '[r]easonable efforts ... have been unable to rehabilitate the parent or parents,' the juvenile court must consider whether clear and convincing evidence supports the conclusion that a parent is unfit because (1) the services provided were appropriate to support the parent's treatment plan but (2) they were unsuccessful in accomplishing the treatment plan's purpose of rendering him or her a fit parent. In making such a finding, the juvenile court thereby satisfies the supreme court's due process requirement that 'all reasonable means of establishing a satisfactory parent-child relationship have been tried and found wanting.'

300 P.3d at 915 (alteration in original) (quoting *A.M.D.*, 648 P.2d at 640).

¶ 17 Both mother and father expressly stipulated that their treatment plans were appropriate within the meaning of sections 19–1–103(10) and 19–3–508 in that they were "reasonably calculated to render [the parents] fit to provide adequate parenting to the children within a reasonable time" and they "relate[d] to the children's needs."

¶ 18 We note that the standard for preserving a challenge to the adequacy of a parent's treatment plan for appellate review is not clear. On the one hand, a division of our court in *People in Interest of M.S.*, 129 P.3d 1086, 1087 (Colo.App.2005), held that where a respondent parent did not object to the adequacy of the treatment plan at the time of its adoption by the trial court, the parent is deemed to have acquiesced in any inadequacies of the treatment plan, and therefore, the parent is precluded from raising the issue of the adequacy of the treatment plan on appeal.

¶ 19 On the other hand, the division in *S.N–V.* concluded that the procedures at the termination of parental rights hearing—mandated by the Due Process Clause, U.S. Const. amend. XIV, and Colorado's Parent–Child Legal Relationship Termination Act of 1987, §§ 19–3–601 to –612, C.R.S. 2015—require that the trial court determine whether the petitioner established "by clear and convincing evidence that an appropriate treatment plan approved by the court has not been successful in rehabilitating the parent, the parent is unfit, and the conduct or condition of the parent is unlikely to change within a reasonable time." *S.N–V.*, 300 P.3d at 915. The division reached this conclusion despite father acquiescing in his treatment plan—based on the plain language of section 19–3–604(1)(c) and the differing purposes of dispositional and termination of parental rights hearings. *S.N–V.*, 300 P.3d at 917.

¶ 20 Mother now contends that her treatment plan was inappropriate because it did not address the concerns about domestic violence that were present from the beginning of the case. She maintains that placing domestic violence counseling in the treatment

plan would have made her aware that domestic violence was an issue that she needed to address in order to reunify her family and would have allowed the court to ensure that proper services were in place and to monitor her compliance with those services.

¶ 21 The trial court concluded that mother could not challenge the appropriateness of her treatment plan for the first time at the termination hearing, but she could challenge the reasonableness of the efforts to rehabilitate her. The court found that her treatment plan had failed because she did not actively participate in therapy, and thus, she did not learn new skills that she could incorporate into her life. However, the court did not make explicit findings as to whether the Department had fulfilled its obligation to show by clear and convincing evidence that (1) it provided mother with a treatment plan that was reasonably calculated to render her fit to provide adequate parenting to her children within a reasonable time and which related to the children's needs; and (2) if it did, whether mother is unfit because the services provided were appropriate to support her treatment plan, but they were unsuccessful in accomplishing the treatment plan's purpose of rendering her a fit parent. We conclude that the judgment is deficient for this reason, and that the case must be remanded to the trial court to address these factors required by section 19-3-604(1)(c) and (2)(h).

¶ 22 The Department's case manager who drafted mother's treatment plan conceded that she did not know why services expressly designed to address domestic violence "didn't make it into the treatment plan." But she testified that such services were available to mother, and she suggested them to mother "numerous times." She also stated that she had discussed mother's and father's relationship with both parents, and they knew that the children could not be returned if father was still at home because of concerns about ongoing domestic violence.

¶ 23 Were the safety concerns about domestic violence adequately addressed in the services that were otherwise provided to mother? We conclude this presents a question of fact that must be considered by the trial court. Because on remand the trial court may determine the safety concerns about domestic violence were adequately addressed—and therefore reinstate the judgment—we will also address mother's remaining contentions.

### III. Mother's Compliance With Her Treatment Plan

¶ 24 Mother contends that the record does not clearly and convincingly support the trial court's finding that she did not comply with her treatment plan. We disagree.

¶ 25 A parent is responsible for assuring compliance with and success of the services provided. *People in Interest of C.T.S.*, 140 P.3d 332, 335 (Colo.App.2006).

¶ 26 Absolute compliance with every provision of the treatment plan is not required. *People in Interest of C.L.I.*, 710 P.2d 1183, 1185 (Colo.App.1985). However, partial compliance, or even substantial compliance, may not be sufficient to render the parent fit. *People in Interest of D.L.C.*, 70 P.3d 584, 588 (Colo.App.2003).

¶ 27 Here, both Department case managers testified that mother complied with some of the requirements of her treatment plan, but she did not comply adequately with other requirements, and ultimately, the plan was not successful. Among other things, she did not have housing for the children at the end of the case; she did not progress in visitation beyond level one, which was intensely supervised visitation; and her attendance at individual therapy was very poor. Significantly, a major concern that emerged during the case was mother's poor sexual boundaries, which she demonstrated by having sex in front of the children. That concern was to be addressed in individual therapy, but mother's attendance at individual therapy was "almost nonexistent."

¶ 28 We conclude that the evidence is more than sufficient to support the trial court's finding that although mother complied with the technical requirements of her treatment plan, such as the requirement that she sign releases, she did not comply with the substantive requirements of the plan.

## IV. Mother's Fitness and Likelihood of Change

¶ 29 Mother contends that that the record does not clearly and convincingly support the trial court's finding that she is unfit and her conduct or condition is unlikely to change within a reasonable amount of time. Although the trial court did not make adequate findings regarding the Department's reasonable efforts to rehabilitate mother, we conclude that its other findings regarding the unfitness of mother are supported by the record.

¶ 30 An unfit parent is one whose conduct or condition renders him or her unable to give a child reasonable parental care. *People in Interest of M.T.*, 121 P.3d 309, 313 (Colo.App.2005).

¶ 31 In determining whether the conduct or condition that renders a parent unfit will change within a reasonable time, the court may consider whether any change has occurred during the pendency of the proceeding, as well as the parent's social history and the chronic or long-term nature of the parent's conduct or condition. *K.D. v. People*, 139 P.3d 695, 700 (Colo.2006).

¶ 32 The current case manager opined that mother was unfit in light of major concerns, such as her lack of boundaries with sex, and her failure to address such concerns through individual therapy. The case manager also opined that she was unlikely to become fit within a reasonable time, given her lack of progress during the two and a half years that the case had been open. We conclude that this testimony is sufficient to support the trial court's conclusion that mother is unfit and unlikely to become fit within a reasonable time. Thus, if the court on remand finds that reasonable efforts to rehabilitate mother were made, the court can also conclude, based on the evidence of her lack of progress, that she is unfit and unlikely to become fit within a reasonable time.

## V. Less Drastic Alternative to Termination

¶ 33 Both mother and father contend that the trial court erred in finding by clear and convincing evidence that there was no less drastic alternative to the termination of their parental rights. We do not agree.

¶ 34 Implicit in the statutory scheme for termination is a requirement that the trial court consider and eliminate less drastic alternatives before entering an order terminating the parent-child legal relationship. *M.M.*, 726 P.2d at 1122.

¶ 35 In considering whether there is a less drastic alternative to termination, the court must give primary consideration to the physical, mental, and emotional conditions and needs of the child. *People in Interest of M.B.*, 70 P.3d 618, 626 (Colo.App.2003).

¶ 36 The trial court found that the Department had investigated placement of Ma.B. with her paternal grandparents in Florida, but she was frightened of the prospect of being separated from the rest of her family and, in any event, her grandparents did not complete a home investigation. No other family members were found who were willing and appropriate for placement of Ma.B. The court further found that because permanency was very important for both Ma.B. and K.B., continued foster care was not a viable less drastic alternative to adoption for them. The court's findings are amply supported by the testimony of the Department's case managers.

## VI. Best Interests of the Children

¶ 37 Mother contends that the trial court erred in finding by clear and convincing evidence that the termination of her parental rights was in the best interests of the children. She argues that it was in the children's best interests to give her more time to complete her treatment plan. We do not agree.

¶ 38 In deciding whether to terminate parental rights, a trial court bases its decision on the best interests of the child. *People in Interest of D.P.*, 160 P.3d 351, 356 (Colo.App.2007). In making that determination, the court must give primary consideration to the physical, mental, and emotional conditions and needs of the child. § 19-3-604(3).

¶ 39 The trial court found that termination would be harmful to the children because both had strong bonds to mother. However, the court also found that both Ma.B. and K.B. needed permanence more than most children because of the harm they had suffered while in the custody of mother and father. The court concluded that even though there was a risk that termination of their parents' rights would lead to a loss of relationships with their siblings as well as their parents, the benefits of termination would outweigh the risks.

¶ 40 We conclude that the court's findings are adequately supported by the testimony of the current case manager, who stated that he had considered whether the harm of termination outweighed the harm of not achieving permanency and had concluded that termination was in the children's best interests. He reached this conclusion because the concerns that led the Department to become involved with the family initially still existed and because permanency was very important for both children.

## VII. Reasonable Efforts to Reunite Father and Ma.B.

¶ 41 Father contends that the record does not clearly and convincingly support the trial court's findings that the Department made reasonable efforts to reunite him with Ma.B., and that his treatment plan was reasonable and remained reasonable throughout the case. He argues that the court erred in suspending his parenting time in March 2015 and erred in further relying on that suspension to terminate his parental rights. We perceive no error.

¶ 42 Visitation services are to be provided to parents "as determined necessary and appropriate by individual case plans." § 19–3–208(2)(b)(IV).

¶ 43 When deciding whether visitation services should be provided, the court must bear in mind that the purpose of a treatment plan is to preserve the parent-child relationship by assisting the parent in overcoming the problems that required intervention into the family. D.G., 140 P.3d at 304. Nevertheless, the health and safety of the children are the paramount concern. § 19–1–103(89). Questions concerning children's health and safety are matters entrusted to the sound discretion of the trial court. People in Interest of B.C., 122 P.3d 1067, 1070 (Colo.App.2005).

¶ 44 The trial court found that father, like mother, had complied with the technical requirements of his treatment plan but had not complied with the plan's substantive requirements. As an example, the court cited father's failure to change his behavior after completing an anger management course. The court noted that father's parenting time with Ma.B. had been suspended "because of his angry behavior during his visits and its effect on [Ma.B.]."

¶ 45 The record confirms that father's individual therapy focused on anger management and helping him regulate his emotions. Initially, father's therapy was considered successful, but as time passed, it became "quite clear" that he did not yet have control of his emotions. His threats against visitation personnel, together with the negative effect that his anger had on Ma.B. during visits, led to the suspension of his visits. He was told that he needed to resume his individual therapy if he wanted visitation to resume, but at the time of the termination hearing, his visitation remained suspended because his attendance at therapy had been so erratic that his therapist could not recommend resumption of visitation.

¶ 46 We are satisfied that the evidence is sufficient to support the conclusion that the Department made reasonable efforts to reunite father and Ma.B.

## VIII. Conclusion

¶ 47 The judgment terminating the parent-child legal relationship between father and Ma.B. is affirmed. The judgment terminating the parent-child legal relationship between mother and K.B. and Ma.B. is vacated, and the case is remanded to the trial court so that the court may make findings as to the reasonableness of the efforts made to rehabilitate mother, without taking additional evi-

dence. If the court determines that reasonable efforts were not made to rehabilitate her, the court shall order further proceedings consistent with that determination. If the court determines that reasonable efforts were made to rehabilitate her, the court shall reinstate the judgment terminating mother's parental rights. Mother may appeal only that determination.

Hawthorne and Furman, JJ., concur.