24CA0566 Peo in Interest of HM 10-31-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0566
Jefferson County District Court No. 23JV30094
Honorable Ann Gail Meinster, Judge

The People of the State of Colorado,

Appellee,

In the Interest of H.M., a Child,

And Concerning D.R. and P.M.,

Appellants.

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE TAUBMAN*
Román, C.J., and Martinez*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

Kimberly Sorrells, County Attorney, Claire M. Czajkowski, Assistant County
Attorney, Golden, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for
Appellant D.R.

Bergner Law Office, LLC, Stephanie Bergner, Leif Ericson, Carbonale, Colorado,
for Appellant P.M.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024

¶ 1   In this dependency and neglect proceeding, D.R. (mother) and P.M. (father) appeal the judgment terminating their parent-child legal relationships with H.M. (the child).  We affirm.

I.   Background

¶ 2   In April 2023, the Jefferson County Division of Children and Families filed a petition in dependency and neglect regarding the then-two-day-old child and alleging concerns about the parents' substance use.  The Division noted that the child had tested positive for amphetamine at birth and was experiencing withdrawal symptoms which required neonatal intensive care.  After forty-six days in the hospital, the child was released and placed in foster care.

¶ 3   The juvenile court adjudicated the child dependent or neglected.  The court adopted treatment plans that required the parents to address their substance abuse issues, develop stability and parenting skills, and attend family time.

¶ 4   The Division later moved to terminate the parents' legal relationships with the child.  In February 2024, following an evidentiary hearing, the juvenile court granted the motion.

## II. Discussion

¶ 5 Both parents contend that the juvenile court erred by finding that they could not become fit within a reasonable time. Mother asserts that the court rushed to terminate her rights despite her engagement in treatment and family time. Father asserts that the court erred by terminating his rights less than five months after his treatment plan was adopted without considering whether additional time would have been in the child's best interests. We are not persuaded.

## A. Standard of Review

¶ 6 A juvenile court's termination of parental rights presents a mixed question of law and fact because it involves application of the termination statute to evidentiary facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10, 486 P.3d 1201, 1204. We review the court's factual findings for clear error, but we review de novo the court's legal conclusions based on those facts. *Id.*

¶ 7 The credibility of the witnesses, as well as the sufficiency, probative effect, and weight of the evidence, and the inferences and conclusions to be drawn from the evidence, are within the province of the juvenile court. *People in Interest of A.J.L.*, 243 P.3d 244,

249-50 (Colo. 2010). We do not reweigh the evidence or substitute our judgment for that of the juvenile court. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62, 492 P.3d 392, 402.

### B. Applicable Law

¶ 8 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 9 A parent is unfit if the parent is unable or unwilling to give a child reasonable parental care. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 23, 524 P.3d 1209, 1216. "Reasonable parental care requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs." *S.R.N.J-S.*, ¶ 9, 486 P.3d at 1204. A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs and, therefore,

may also be considered in determining unfitness." *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 10 Parents must have a reasonable amount of time to work on a treatment plan before the juvenile court terminates their parental rights. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007). The determination of a reasonable period is necessarily fact specific, and thus, what constitutes a reasonable time to comply with a treatment plan may vary from case to case. *Id.* However, a reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. *S.Z.S.*, ¶ 24, 524 P.3d at 1216. Periods as short as five to nine months have been held to be sufficient to comply with a treatment plan. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).

¶ 11 In determining whether a parent's conduct or condition is likely to change and whether the parent can become fit in a reasonable time, the juvenile court may consider several factors, including whether any change occurred during the dependency and neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *K.D. v.*

*People*, 139 P.3d 695, 700 (Colo. 2006). As in this case, when a child is under six years old at the time of filing the petition in dependency and neglect, the juvenile court must also consider the expedited permanency planning (EPP) provisions, which require that such children be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024; *see also S.Z.S.*, ¶ 25, 524 P.3d at 1216.

### C. Analysis

¶ 12 The juvenile court considered whether mother or father could become fit within a reasonable amount of time but ultimately concluded they could not. The court found that neither parent had complied with his or her treatment plan and that the same problems addressed in the plans still existed "without adequate improvement" at the time of the termination hearing. The court relied "very heavily on the history of the case" and noted that the parents had been involved in four prior dependency and neglect cases, two of which resulted in termination of parental rights, and all of which involved substance abuse. The juvenile court found that the parents had "chronic and long term substance abuse issues" and had not demonstrated any change "over the last 14

5

years." The court also noted that the case was subject to the EPP provisions and found that it would not be in the child's best interests to allow additional time for the parents to work on their treatment plans.

¶ 13     The record supports these findings. It shows that although treatment and services were available throughout the case, by the time of termination, neither parent had successfully addressed the concerns that initially brought the child to the Division's attention. To address their substance abuse issues, both parents were required to complete substance abuse evaluations, attend recommended treatment, and provide urinalysis (UA) tests twice per week. However, the caseworker testified that mother completed her substance abuse evaluation but only attended one group session and only completed one UA, which was positive for amphetamine, marijuana, and fentanyl. Although father signed a release of information, he never completed a substance abuse evaluation, attended any treatment, or completed any UAs.

¶ 14     It is true, as mother points out, that she testified she was receiving methadone treatment and had started drug and alcohol classes by the time of the termination hearing. However, mother

also testified that she had used substances only two weeks before the hearing. Further, the caseworker's testimony and report, which was admitted as evidence during the hearing, indicate that mother never provided any documentation of treatment or classes in which she claimed to have been engaged. Thus, we are unpersuaded by mother's argument that the juvenile court should have allowed her more time based on her testimony that she had recently engaged in treatment. *See In re Marriage of Kann*, 2017 COA 94, ¶ 36, 488 P.3d 245, 252 ("[O]ur supreme court has . . . expressed unbridled confidence in trial courts to weigh conflicting evidence.").

¶ 15    It is also true, as father points out, that the juvenile court terminated his parental rights approximately one week less than five months after it adopted his treatment plan. However, the record shows that the court's adoption of father's treatment plan was delayed because, although the Division repeatedly attempted to serve father between June and August 2023, it eventually had to serve him by publication. The record also indicates that even before the court adopted father's treatment plan, the Division offered him services, but he chose not to engage. Specifically, the caseworker's report stated that she had met with father several times in April

7

and May 2023, and that around that time, father signed a release of information so she could refer him for a substance abuse evaluation. Although a parent is not obligated to cooperate with the department's requests prior to service and adjudication, *see e.g. People in Interest of M.H-K.*, 2018 COA 178, ¶¶ 77-80, 433 P.3d 627, 639, we do not perceive any error in the court's consideration of father's historical lack of engagement, including his lack of engagement during the timeframe prior to the adoption of his treatment plan. *See K.D.*, 139 P.3d at 700 (the juvenile court may consider the chronic or long-term nature of the parent's conduct or condition in determining whether the parent can become fit within a reasonable amount of time).

¶ 16    Nor are we persuaded by father's argument that the juvenile court improperly focused on his past conduct instead of his progress in this case and his bond with the child. Even if the court had only considered father's conduct during these proceedings, the evidence showed that father did not engage in any substance abuse treatment or provide any evidence of sobriety at any point during this case, including the almost five-month period after the court adopted his treatment plan.

8

¶ 17    Both parents also point out that they attended family time and argue that they should have been given more time based on that engagement.  But the juvenile court found that the parents did not "attend regularly enough" to keep it from finding non-compliance with family time requirements of their treatment plans.  This finding is supported by the caseworker's testimony and report, which indicated that the parents' family time attendance was inconsistent and that after the child was released from the hospital, mother missed twenty-eight visits, while father missed thirty-four.  Partial or even substantial compliance with a treatment plan does not necessarily render a parent fit.  *People in Interest of K.B.*, 2016 COA 21, ¶ 26, 369 P.3d 822, 828.

¶ 18    The record also shows, as the juvenile court found, that the parents' issues with substance abuse were long-term or chronic.  The caseworker's report states that both parents had an "extensive history with the Division regarding concerns of substance use with their six other children."  The report indicates that the first dependency and neglect case, which was filed after mother gave birth to a child who tested positive for marijuana and cocaine, was opened in 2011.  Since that time, at least three other dependency

and neglect cases, all involving substance abuse, were opened regarding the parents' older children. At the time of the termination hearing, none of the parents' older children were in their care. Also, the case prior to this one ended in termination only two months before the child in this case was born and tested positive for amphetamine. By the time of the termination hearing — thirteen years after the first case opened — the parents were still struggling with substance abuse. As noted above, mother only provided one UA, which was positive, and had used illicit substances as recently as two weeks before the hearing. And, although father testified he was sober, the juvenile court did not find his testimony to be credible, as he had not engaged in any treatment or provided any UAs to show such sobriety.

¶ 19 Last, at the time of termination, the child had been out of the home for her entire life. Contrary to father's assertion, the juvenile court considered whether a continuance to allow the parents more time would be in the child's best interests but concluded it would not. While father argues that a continuance would not have negatively impacted the child, the caseworker opined that termination was in the child's best interests because the child

needed stability and permanency. Although the caseworker did not expressly testify that the child's age was a factor in her opinion regarding permanency, our legislature has recognized that "children undergo a critical bonding and attachment process prior to the time they reach six years of age" and that "a child who has not bonded with a primary adult during this critical stage will suffer significant emotional damage which frequently leads to chronic psychological problems and antisocial behavior when the child reaches adolescence and adulthood." § 19-1-102(1.6).

¶ 20 In sum, the juvenile court properly determined that neither parent could become fit within a reasonable time by considering the evidence showing their partial compliance and weighing it against the contrary evidence and the child's needs. Because the record supports the court's determination, we may not disturb the judgment.

III. Disposition

¶ 21 The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUSTICE MARTINEZ concur.

11