25CA1448 Peo in Interest of PS 02-12-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1448
Delta County District Court No. 23JV30014
Honorable Michael A. O'Hara III, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of P.S. and F.H., Children,

and Concerning C.H. and T.D.H.,

Appellants.

---

JUDGMENTS AFFIRMED

Division V
Opinion by JUDGE LIPINSKY
Tow and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

---

John Baier, County Attorney, Adriana Hartley, Assistant County Attorney, Delta, Colorado, for Appellee

Robert G. Tweedell, Counsel for Youth, Delta, Colorado, for P.S.

Robert G. Tweedell, Guardian Ad Litem, for F.H.

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant C.H.

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant T.D.H.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.

VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     C.H. (mother) appeals the judgment terminating her parent-child legal relationships with P.S. and F.H. (the children), and T.D.H. (father) appeals the judgment terminating his parent-child legal relationship with F.H.  We affirm the judgments.

## I.     Background

¶ 2     The Delta County Department of Human Services filed a petition in dependency and neglect that documented concerns about educational neglect for then-ten-year-old P.S., medical neglect for then-sixteen-month-old F.H., and the conditions in the camper where the family was living.

¶ 3     Both parents entered admissions, and the juvenile court adjudicated the children dependent and neglected and adopted treatment plans for the parents.  The Department placed the children separately for most of the case; it placed P.S. in the Denver area about a month after filing the petition.

¶ 4     The Department later moved to terminate the parents' parental rights.  Almost two years after the Department filed the petition, the juvenile court terminated mother's parental rights to the children and father's parental rights to F.H. following a contested hearing.

1

## II. Reasonable Efforts

¶ 5     Both parents contend that the Department failed to make reasonable efforts to rehabilitate them and reunite the family. We disagree.

### A. Standard of Review and Applicable Law

¶ 6     A human services department must make such reasonable efforts before a juvenile court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2025. §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2025. "Reasonable efforts" means the "exercise of diligence and care" for a child who is in out-of-home placement. The reasonable efforts standard is satisfied when the department provides services to the family in accordance with section 19-3-208. § 19-1-103(114).

¶ 7     "We review the juvenile court's findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support." *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10, 486 P.3d 1201, 1204. But the ultimate determination of whether the Department provided reasonable efforts is a legal conclusion that we review de novo. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8, 527 P.3d 404, 407.

¶ 8     The Children's Code specifies that services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard. *See* § 19-1-103(114). Among the services required under section 19-3-208 are screening, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services for parents with children in out-of-home placement; and placement services including foster care and emergency shelter. § 19-3-208(2)(b).

¶ 9     The juvenile court did not make findings regarding the Department's reasonable efforts. However, a juvenile court's failure to make express findings on this issue does not, standing alone, establish a failure by the court to ensure that the Department made reasonable efforts. *People in Interest of A.S.L.*, ¶ 15, 527 P.3d at 408.

## B.     Mother's Contentions

¶ 10    Reviewing de novo the ultimate question of whether the Department satisfied its statutory reasonable efforts obligation, we conclude that the record demonstrates that the Department met the reasonable efforts standard. The Department devised a treatment

plan for mother and, according to the caseworker's uncontroverted testimony, it provided mother with life skills services, parenting classes, substance monitoring, and mental health evaluations. Furthermore, the Division facilitated individual therapy, occupational therapy, speech language therapy, and physical therapy for the children.

¶ 11     Mother contends that the Department failed to make "reasonable efforts to rehabilitate [her] and reunite the family" because the Department placed P.S. "too far away for the [p]arents and P.S. to have a meaningful amount of in-person family time." We conclude that the Department met its reasonable efforts obligation to provide mother with meaningful opportunities for family time. The Department initially placed P.S. with a series of kinship placement providers in Delta County. When P.S. required specialized care, however, the Department could not locate a placement for him in Delta County. The Department initially placed him in Brighton and later at a therapeutic foster home in Denver. The Department offered mother opportunities to participate in family time with P.S., both virtually and in-person. When mother logged into virtual family time, she was often distracted by shopping

or other tasks instead of interacting with the child. Even though the Department offered mother financial and logistical support to help her attend in-person family time with P.S., mother "would often say that [she] couldn't" attend. In addition, Mother declined the Department's offers to cover the cost of lodging, bus passes, and train tickets to facilitate her visits with P.S.

### C. Father's Contentions

¶ 12 Father contends that the Department failed to make reasonable efforts because it did not refer him for substance testing after his probation was revoked. But we discern no error. The caseworker testified that further substance testing services for father were not necessary because the Department was not concerned about his substance use. *See People in Interest of S.L.*, 2017 COA 160, ¶ 31, 421 P.3d 1207, 1215 (holding that to satisfy the reasonable efforts requirement, the department of human services should "provide the parents with necessary and needed services").

¶ 13 Father also contends that the Department failed to provide reasonable efforts because it offered father family time with P.S., but that father was unable to meaningfully participate in it because

the Department had placed P.S. at a distant location. But father is not P.S.'s parent. Father therefore lacked standing to raise issues concerning P.S. *People in Interest of E.S.*, 49 P.3d 1221, 1222-23 (Colo. App. 2002). We therefore do not address this claim.

### III. Appropriate Treatment Plan

¶ 14     Father next contends that his treatment plan was not appropriate. We disagree.

¶ 15     The purpose of a treatment plan is to preserve the parent-child legal relationship by helping the parent overcome the problems that required the intervention into the family. *People in Interest of L.M.*, 2018 COA 57M, ¶ 25, 433 P.3d 114, 119-20. Therefore, an appropriate treatment plan is one that the juvenile court approves, relates to the child's needs, and provides treatment objectives that are reasonably calculated to render the parent fit to provide adequate parenting to the child within a reasonable time. § 19-1-103(12); *People in Interest of K.B.*, 2016 COA 21, ¶ 13, 369 P.3d 822, 826.

¶ 16     We measure the appropriateness of a treatment plan by its likelihood of success in reuniting the family, which we assess in light of the facts existing when the juvenile court approved the plan.

*People in Interest of B.C.*, 122 P.3d 1067, 1071 (Colo. App. 2005). In determining whether a treatment plan is appropriate, the court must consider whether the plan's objectives adequately address the safety concerns identified during the assessment of the family. *People in Interest of K.B.*, ¶ 14, 369 P.3d at 826. A treatment plan's ultimate lack of success does not mean it was inappropriate when the court approved it. *Id.*

¶ 17    Father claims that his treatment plan became inappropriate when the juvenile court did not modify it to (1) address substance testing after father's probation was revoked or (2) require a neuropsychological evaluation. We disagree.

¶ 18    When the juvenile court approved father's treatment plan, it also granted his request to limit his substance testing requirements to sharing with the caseworker the testing results he was required to submit to his probation officer. The revocation of father's probation ended his obligation to provide substance testing under the terms of his treatment plan. In other words, the juvenile court did not need to amend father's treatment plan to reflect this change in his circumstances. (Although the juvenile court noted father's failure to submit substance testing while he was on probation, the

7

record does not indicate that the juvenile court erroneously imposed an expectation that father would submit substance testing results after his probation was revoked.)

¶ 19   Father also claims that the treatment plan was inappropriate because the Department wanted to add a requirement that father complete a neuropsychological evaluation but did not formally do so. But this is not what father argued at trial. Instead, father objected to the caseworker's testimony about the possible need for a neuropsychological evaluation and urged the juvenile court to find that father "should not be punished for not participating in an evaluation he was not required or ordered to complete." Therefore, we will not consider this issue. *People in Interest of N.A.T.*, 134 P.3d 535, 537 (Colo. App. 2006) (noting that an appellate court will not consider an issue when a parent took the opposite position in the juvenile court).

## IV.   Fitness

¶ 20   Mother contends that the juvenile court erred by finding that she was not fit and not likely to become fit within a reasonable period of time. We discern no error.

8

¶ 21    An unfit parent is one whose conduct or condition renders the parent "unable or unwilling to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions." § 19-3-604(2).

¶ 22    Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15, 480 P.3d 682, 686. As noted above, we review the juvenile court's findings of evidentiary fact for clear error and its legal conclusions de novo, including a conclusion that a parent is unfit. *People in Interest of S.R.N.J-S.*, ¶¶ 10-11, 486 P.3d at 1204-05.

¶ 23    Mother contends, with record support, that she substantially complied with her treatment plan because she completed a psychological evaluation and complied with the recommendation for mental health treatment, signed the requested releases of information, completed a parenting class, obtained an appropriate apartment, prepared a budget, remained in contact with the Department, and rarely missed virtual or in-person family time with

9

the children. However, partial or even substantial compliance with a treatment plan may not render a parent fit. *People in Interest of S.L.*, ¶ 11, 421 P.3d at 1212.

¶ 24 The juvenile court found that mother was unfit and unlikely to become fit within a reasonable period of time because she did not comply with key portions of the treatment plan and did not adequately address the concerns that brought the case to the juvenile court's attention. The juvenile court found that, although mother regularly attended family time, she "failed to engage sufficiently" with the children during those sessions. The juvenile court also expressed significant concern about mother's inability to provide a safe and stable environment for the children. And the juvenile court noted that, although "[b]oth children need significant services based on their prior experiences with" mother, she was "unwilling or unable to make accommodations to meet the needs of these children." The juvenile court found that mother "still fail[ed] to recognize appropriate behaviors" with P.S. and struggled with "even the most basic parenting skills despite participation in education."

¶ 25    The record supports these findings.  The caseworker provided uncontroverted testimony that mother often shopped or engaged in other activities during virtual family time rather than talking with the children.  According to the caseworker, mother did not respond to coaching about engaging with the children in an age-appropriate manner.  The caseworker testified that both children had "complex needs," meaning "there are several different areas in their lives that would need constant or long-term specialized care."  The caseworker, an expert in child welfare and child protection, opined that mother did not understand the children's needs and was not able to follow through with services for them.

¶ 26    While the caseworker acknowledged that mother "has attempted to engage in some services and has been consistent in some services," the caseworker also testified that mother only consistently engaged after the Department filed the termination motion, demonstrating that mother was unable to show stability over time.  The caseworker said it was "huge" that mother had obtained an appropriate apartment, but that "it [was] only a little part . . . of the case."  The caseworker further testified that mother demonstrated minimal progress in mitigating concerns regarding

11

her financial stability and budgeting, personal hygiene, and maintaining a safe home environment.

¶ 27    In sum, while some evidence supported mother's position that she had complied with certain of the elements of her treatment plan, there was also evidence that she remained unable to meet the children's complex needs.  It is within the juvenile court's purview to weigh evidence and determine witness credibility.  *See In re Marriage of Kann*, 2017 COA 94, ¶ 36, 488 P.3d 245, 252 ("[O]ur supreme court has . . . expressed unbridled confidence in trial courts to weigh conflicting evidence."); *see also Carrillo v. People*, 974 P.2d 478, 486 (Colo. 1999) (recognizing "the trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses" and "discourag[ing] an appellate court from second-guessing those judgments based on a cold record").

¶ 28    Mother also contends that "[t]o the extent poverty remained an issue for this family, the [juvenile] court erred [by] terminating the [p]arents' parental rights because of the downstream effects of the family's socioeconomic circumstances."  Mother presented this argument at the termination hearing, and the juvenile court explicitly addressed and rejected it.

¶ 29    The juvenile court acknowledged the truth of mother's argument that the "children should not be removed from [mother and father's] case [sic] because they are poor."  The juvenile court found, however, that "nearly two years after removal, the parents are unwilling to seek out or accept assistance from others or government agencies to improve their situation or the lives of their children."  It further found that the parents had "militated against complying with the [t]reatment [p]lan" and "will not engage in services that are designed to assist them and their children."

¶ 30    These findings make clear that the juvenile court found mother to be unfit not because of her socioeconomic circumstances but because she was "unable or unwilling to give the child[ren] reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child[ren]'s physical, emotional, and mental health needs and conditions." § 19-3-604(2).

¶ 31    Mother also contends that, even if she was unfit, the juvenile court erred by terminating her parental rights because termination was not in the children's best interests.  This argument fails for two reasons.  First, mother claims that termination was not in P.S.'s

13

best interests because he was not in a potentially permanent home at the time of the termination hearing. But "the child does not need to be in a potentially adoptive home, nor do we require that a specific adoptive placement be identified or known to the court at the time of termination." *People in Interest of H.L.B.*, 2025 COA 86, ¶ 20, ___ P.3d ___, ___. Second, and more importantly, the Children's Code does not support the conclusion that "a parent-child relationship should be continued when it has been shown by clear and convincing evidence that . . . the parent is unfit, an appropriate treatment plan has been tried without success, and the conduct or condition of the parent is unlikely to change within a reasonable time." *People in Interest of A.M.*, ¶ 36, 480 P.3d at 689 (quoting *People in Interest of A.M.D.*, 648 P.2d 625, 637-38 (Colo. 1982)). In other words, the Children's Code does not support a conclusion that termination is not in the child's best interests if the other statutory criteria for termination have been met.

## V. Disposition

The judgments are affirmed.

JUDGE TOW and JUDGE TAUBMAN concur.