The PEOPLE of the State of Colorado, In the Interest of D.L.C., Jr., a Child,

Upon the Petition of Denver County Department of Human Services, Petitioner–Appellee,

and Concerning J.L.C., Respondent–Appellant.

No. 01CA2509.

Colorado Court of Appeals, Div. V.

Feb. 27, 2003.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2002.

J. Wallace Wortham, Jr., City Attorney, Laura Grzetic Eibsen, Assistant City Attorney, Denver, Colorado, for Petitioner–Appellee.

Deborah Gans, Denver, Colorado, for Respondent–Appellant.

Opinion by Judge NIETO.

J.L.C. (mother) appeals from a judgment terminating the parent-child legal relationship between her and her child, D.L.C., Jr. We affirm.

I.

Mother contends that the juvenile court erred by excusing the appearance of the guardian ad litem (GAL) during a portion of the termination hearing. Mother argues that, because of the unique position of a guardian ad litem, his or her absence during a termination hearing constitutes per se reversible error. We reject this contention.

On the first day of the termination hearing, the GAL asked to be excused because of a family medical emergency. The GAL stated that she was aligned with the department and did not have any witnesses of her own. Over mother's objection, the juvenile court granted the GAL's request. The GAL returned on the third day of the hearing and participated through its conclusion.

A GAL must be appointed for a minor child in dependency and neglect actions under § 19–3–501, C.R.S.2002, and termination of parental rights proceedings under § 19–3–602, C.R.S.2002. Sections 19–3–203(1), 19–3–602(3), C.R.S.2002. A GAL is charged with the responsibility of representing the child's best interests. Section 19–3–203(3), C.R.S. 2002; *People in Interest of J.E.B.*, 854 P.2d 1372 (Colo.App.1993).

> To that end, the guardian ad litem shall make such further investigations as the guardian ad litem deems necessary to ascertain the facts and shall talk with or observe the child involved, examine and cross-examine witnesses in both the adjudicatory and dispositional hearings, introduce and examine the guardian ad litem's own witnesses, make recommendations to the court concerning the child's welfare, appeal matters to the court of appeals or the supreme court, and participate further in the proceedings to the degree necessary to adequately represent the child.

Section 19–3–203(3).

Section 19–3–203(3) defines the role of a GAL without specifying the precise method that should be utilized in performing the role. *People in Interest of J.E.B., supra.* The phrase "to the degree necessary to adequately represent the child" is applicable to all the duties itemized in § 19–30–203(3). *People in Interest of M.W.*, 796 P.2d 66 (Colo.App.1990).

To assist the administration of justice, the chief justice promulgated Chief Justice Directive 97–02 (revised July 1, 2001)(CJD 97–02) concerning, among other issues, court appointment of GALs.

■ The chief justice is the executive head of the Judicial Branch. She implements her administrative authority through chief justice directives. "The Chief Justice Directive represents an expression of Judicial Branch policy, to be given full force and effect in matters of court administration." *Office of State Court Administrator v. Background Information Services, Inc.,* 994 P.2d 420, 431 (Colo.1999).

CJD 97–02 addresses the appointment, payment, training, and duties of GALs, as well as the duties of judges and magistrates relative to court-appointed GALs. Section XI(A) provides that a GAL "shall diligently take steps that he or she deems necessary to protect the interest of the person for whom he or she was appointed." Among other duties, § XI(B)(1) provides, "A guardian ad litem ... in a dependency and neglect case shall specifically: Attend all court hearings...." Section XII directs judges and magistrates to ensure that GALs perform the duties specified in the directive.

Thus, the purpose of CJD 97–02 is to give guidance to courts in the appointment and supervision of GALs and to give guidance to GALS in performing their duties.

CJD 97–02 does not specifically address emergency situations, such as that presented here. However, because it is not asserted that the interests of the child or mother were adversely affected, we do not reach that issue, except to observe that in ordinary circumstances, CJD 97–02 must be followed.

■ It is clear from § 19–3–203 and CJD 97–02 that the performance of the GAL's duties is intended primarily to benefit the child. The court's supervisory duties in CJD 97–02 are directed toward ensuring that the GAL represents the best interest of the child. Therefore, violation of the GAL's duties does not, without more, interfere with a parent's rights.

The interests of the child and the parent may be intertwined or even identical, and in such a case, a GAL's violation of duty might affect the parent's interest. If a parent can show such coincidence of interest, the parent could assert that a violation of CJD 97–02 affected his or her interest. *See People in Interest of M.B.,* 188 Colo. 370, 535 P.2d 192 (1975)(where GAL had previously taken position favorable to parents, it was plain error to hold dispositional hearing in his absence). However, without such a showing, a GAL's violation of duty relates only to the child's rights.

■ In the trial court, mother did not assert that her interest was prejudiced in any way by the GAL's absence. Similarly, mother makes no argument here that she suffered harm because of the GAL's absence. Without a showing that mother's interest was negatively affected, the error, if any, relating to the GAL's representation of the child, was harmless. *See* C.A.R. 35(e) (appellate court shall disregard any error not affecting substantial rights of parties).

## II.

Mother next contends that the evidence is insufficient to support the criteria for termination. We disagree.

Termination of the parent-child legal relationship pursuant to § 19–3–604(1)(c), C.R.S. 2002, requires clear and convincing evidence establishing that an appropriate treatment plan has been approved by the trial court; the parent has not complied with the treatment plan or it has not been successful in rehabilitating him or her; the parent is unfit; and the parent's conduct or condition is unlikely to change within a reasonable time. *People in Interest of A.M.D.,* 648 P.2d 625 (Colo.1982).

The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the province of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. *People in Interest of C.A.K.,* 652 P.2d 603 (Colo.1982).

### A.

Mother argues that the juvenile court erred in finding that she did not reasonably comply with the treatment plan. We find no error.

A parent need not comply absolutely with every provision of a treatment plan. *People in Interest of C.L.I.,* 710 P.2d 1183 (Colo.App.1985). However, partial compliance, or even substantial compliance, may not result in a successful plan that renders the parent fit. *People in Interest of D.M.W.,* 752 P.2d 587 (Colo.App.1987); *see People in Interest of C.A.K., supra.*

Intervention was necessitated here when the child was six months old because mother was not meeting his medical needs. The child, who was born three months prematurely, suffered from chronic lung disease, gastroesophageal reflux disease, retinopathy, and developmental delays, which required ongoing physical and occupational therapy. Shortly after intervention, he was diagnosed as a failure to thrive child and with mild cerebral palsy.

The treatment plan required mother (1) to undergo a substance abuse evaluation and follow any recommendations; (2) to submit to random urinalyses upon request; (3) to have a psychological evaluation and follow any recommendations; (4) to understand and meet the child's medical needs; (5) to visit the child regularly; (6) to attend parenting classes; (7) to attend domestic violence classes; (8) to maintain a stable home and employment; and (9) to cooperate with the department of human services (DHS). The provision regarding the child's medical needs, which was of utmost importance, required mother to attend the child's medical appointments, telephone his therapy providers bi-weekly, and refill the child's prescriptions.

Although mother partially complied with the treatment plan, she failed to comply with the provision regarding the child's medical needs. In fifteen months, mother attended only six of thirty-two doctor appointments, rarely telephoned the child's therapists, and did not refill the child's prescriptions.

Mother also failed to complete parenting classes or domestic violence classes. In addition, mother changed residences frequently and did not maintain stable employment. At the time of the termination hearing, she was unemployed and living with the child's paternal grandmother.

Mother asserts that her noncompliance was due to transportation problems and bed rest during pregnancy with her second child. The record reveals, however, that bus tokens and passes were provided to mother and that transportation was available upon request through an agency that provided family preservation services to mother. Even though mother's bed rest frustrated compliance with the treatment plan for about six weeks, it did not preclude compliance. Furthermore, the social services caseworker and the juvenile court took into account the limitations imposed on mother by the bed rest.

Thus, the record supports the juvenile court's finding that mother did not reasonably comply with the treatment plan, and it will not be disturbed on review. *See People in Interest of C.A.K., supra.*

### B.

Mother also argues that the juvenile court erred in finding that she was unfit and that her conduct or condition was unlikely to change within a reasonable time. Again, we find no error.

An unfit parent is one whose conduct or condition renders him or her unable to give a child reasonable parental care. Reasonable parental care requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, mental, and emotional health needs. Section 19-3-604(2), C.R.S.2002. A parent may be unfit as to one, but not all, of his or her children. *See People in Interest of L.D.,* 671 P.2d 940 (Colo.1983).

Among the factors to be considered in determining a parent's unfitness are the parent's emotional or mental health, the parent's neglect of the child, and the length of the child's foster care placement. Section 19-3-604(2)(a), (f), (k), C.R.S.2002. The trial court must also consider whether reasonable efforts have been made by child-caring agencies to reunite the family. Section 19-3-604(2)(h), C.R.S.2002.

In determining whether a parent's conduct or condition is unlikely to change within a reasonable time, a trial court may

consider whether any change has occurred during the pendency of the dependency and neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of A.N.W.*, 976 P.2d 365 (Colo.App. 1999). A reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. *See* § 19–3–604(3), C.R.S.2002.

■ Mother's psychological evaluation resulted in a diagnosis of panic disorder and a personality disorder, not otherwise specified, with mixed histrionic and narcissistic features. Mother saw herself as a victim, did not recognize the seriousness of the child's medical conditions, and overvalued the effectiveness of the care she provided to the child. Because of her lack of insight and resistance to therapy, the evaluating psychologist did not believe that mother would benefit from psychotherapy. Her prognosis for meeting the child's special medical and developmental needs was poor.

Mother's prognosis was borne out by her failure to attend doctor appointments, maintain contact with the child's therapists, or refill his prescriptions. These failures revealed a lack of understanding of the seriousness of the child's medical conditions and constituted ongoing neglect of the child throughout the pendency of the proceeding.

DHS made efforts and provided services to facilitate family reunification. Among these were family preservation services, which offered in-home, one-on-one parenting instruction, as well as transportation; referrals to group parenting classes and domestic violence classes; and assistance with housing and transportation.

Finally, at the time of the termination hearing, the child was twenty-six months old and had been in foster care for seventeen months. His special needs required routine medical appointments, daily monitoring by his caregivers, and ongoing physical, occupational, and speech therapy. He needed a permanent, stable home, with nurturing, attentive caregivers who could meet his daily needs, which mother was not able to provide.

Thus, the record supports the juvenile court's findings that mother was unfit and that her conduct or condition was unlikely to change within a reasonable time to meet the child's needs. Therefore, they will not be disturbed on review. *See People in Interest of L.D., supra; People in Interest of C.A.K., supra.*

### III.

■ Finally, Mother contends that the juvenile court erred in rejecting permanent placement with the child's paternal grandmother as a less drastic alternative to termination. We find no error.

■ Before entering an order of termination, a trial court must consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108 (Colo.1986). In so doing, the court must give primary consideration to the physical, mental, and emotional needs and conditions of the child. Section 19–3–604(3).

After initiating a home study, the department rejected the paternal grandmother as a placement alternative because of her inability to provide financially for herself and her three children. The department agreed to reconsider placement if the paternal grandmother obtained a job and submitted verification of her employment for three months. Although she maintained a job for five months during the pendency of the proceeding, she did not submit verification to the department. Furthermore, at the time of the termination hearing, the paternal grandmother had been unemployed for five months and was living in subsidized housing with her three children, as well as mother, father, and their new baby.

Thus, we conclude that the juvenile court did not err in rejecting placement with the paternal grandmother as a less drastic alternative to termination. *See People in Interest of C.A.K., supra.*

The judgment is affirmed.

Judge TAUBMAN and Judge CASEBOLT concur.