24CA1991 Peo in Interest of ARQ 05-08-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1991
El Paso County District Court No. 23JV30150
Honorable Lin Billings Vela, Judge

The People of the State of Colorado,

Appellee,

In the Interest of A.R.Q., a Child,

and Concerning I.R.,

Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Johnson and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 8, 2025

Kenneth R. Hodges, County Attorney, Shannon Boydstun, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1      I.R. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with A.R.Q. (the child). We affirm.

## I.      Background

¶ 2      The El Paso County Department of Human Services filed a petition in dependency and neglect in which it alleged that, at the time of the child's birth, both she and mother tested positive for methamphetamine. (The record establishes that the child is female, even though the petition said the child was male.) The Department further alleged that mother had a history of substance use and that she had "prior involvement" with a different county department in a dependency and neglect case involving a different child. (As the court later noted, mother's parent-child legal relationship with that child was terminated.) According to the Department, mother reported that she had used methamphetamine since she was thirteen, had no sober friends, was never in treatment, and used methamphetamine every other day while pregnant. The Department also reported that the child's father was incarcerated.

¶ 3      The juvenile court adjudicated the child dependent and neglected. The court adopted a treatment plan for mother that

required her to attend family time and address, among other things, substance abuse issues.

¶ 4 Nine months after the court adopted mother's treatment plan, the child's father was shot and killed while he and mother were in the same vehicle. Mother was shot five times and hospitalized for a week.

¶ 5 Six weeks later, the Department moved to terminate mother's parental rights. Following an evidentiary hearing, the court terminated the parent-child legal relationship between mother and the child.

## II. Termination Criteria and Standard of Review

¶ 6 A juvenile court may terminate a parent's rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 7 A juvenile court's judgment terminating parental rights presents a mixed question of fact and law involving the application

of the termination statute to the evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15, 480 P.3d 682, 686. The credibility of witnesses and the sufficiency, probative value, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the juvenile court's discretion. *Id.* We review the court's factual findings for clear error and will set them aside only if they lack any support in the record. *Id.* at ¶¶ 15, 48, 480 P.3d at 686, 691; *see People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29, 524 P.3d 1209, 1217. We review de novo the court's legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10, 486 P.3d 1201, 1205.

### III.   Fit Within a Reasonable Time

¶ 8      Mother presents a single argument in this appeal — that the juvenile court erred by finding that she was unlikely to become fit within a reasonable time. We disagree.

### A.   Applicable Law

¶ 9      An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent

provide nurturing and safe parenting adequate to meet the child's physical, emotional, and mental needs and conditions. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006). A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs and, therefore, may also be considered in determining unfitness." *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 10 In determining whether a parent's conduct or condition is unlikely to change in a reasonable time and whether the parent can therefore become fit in a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003). Where a parent has made little to no progress on a treatment plan, the court need not give the parent additional time to comply. *S.Z.S.*, ¶ 24, 524 P.3d at 1216.

¶ 11 Determining a reasonable period is fact-specific and varies from case to case. *Id.* at ¶ 25, 524 P.3d at 1216. However, a reasonable time is not an indefinite time and must be determined by considering the child's physical, mental, and emotional

conditions and needs. *Id.* And when a child is under six years old, as in this case, the court must also consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024; *S.Z.S.*, ¶ 25, 524 P.3d at 1216.

## B. Analysis

¶ 12 In support of its determination that mother was unfit and unlikely to become fit within a reasonable amount of time, the court found, "With no proof of enrollment in counseling, let alone substance abuse treatment, we're no further ahead today than we were the day the case opened." *See D.L.C.*, 70 P.3d at 588-89 (holding that a court may consider whether any change has occurred during the pendency of the dependency and neglect proceeding, among other factors, in determining whether a parent's conduct or condition is unlikely to change within a reasonable time).

¶ 13 The court further found that mother's substance abuse affected her ability to care for the child, who was "too young to self-protect." *See S.Z.S.*, ¶ 25, 524 P.3d at 1216 (explaining that a

5

reasonable time must be determined by considering the child's conditions and needs).  The court also found there was "an utter lack of regular visitation" and that mother's last visit was six months before the hearing.  In addition, the court found that the EPP provisions applied because the child was born only days before the case opened, and it noted that the child had been in foster care for the entire eighteen-month duration of the proceedings.  The record supports the court's findings.

¶ 14     Mother admitted that she was "getting high" for nine months during the pendency of the case.  She also testified that she was "an addict" and had struggled with substance abuse since she was a teenager.

¶ 15     It was undisputed that mother had not completed any rehabilitation programs.  The caseworker testified that mother did not provide the Department with a substance abuse assessment or sign releases to allow the Department to communicate with any substance abuse providers.  He also testified that mother frequently missed urinalysis screenings and the last screening he received was six months before the hearing.  The caseworker further testified that mother did not engage in any therapy during the case.

¶ 16     The court questioned the credibility of mother's assertion that she had attended therapy during the five months preceding the hearing. Mother admitted that she had not provided the Department with proof of her participation in therapy.

¶ 17     The caseworker also testified that mother attended visits irregularly, missed them frequently in the middle of the case, and stopped attending them altogether six months before termination. Mother did not consistently communicate with the caseworker, and there was a lengthy period during which the caseworker could not reach her. After mother missed many visits, the caseworker learned that mother had relocated to another part of the state. He provided her with bus passes until her attendance at visits stopped altogether. When asked whether she had reasonably complied with the treatment plan, mother admitted, "Not to my fullest." Moreover, the child had been in foster care for the eighteen-month duration of the case, essentially her entire life.

¶ 18     The caseworker opined that mother was not a fit parent, her unfitness was unlikely to change within a reasonable period, and the child could not be safely returned to her care. When asked how much time mother would need before the child could be safely

returned to her care, the caseworker responded, "It's been [eighteen] months and nothing has happened, so I don't know if more time would make any difference."

¶ 19     On appeal, mother asserts that she and the child "had maintained a relationship through [m]other's continuous participation in family time." However, that assertion does not square with the record: mother admitted at the hearing that her regular visits had stopped six months earlier. With record support, the court found that even when she was most engaged, mother only attended about half of her visits. It is not our role to reweigh the evidence or substitute our judgment for that of the juvenile court. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62, 492 P.3d 392, 402.

¶ 20     Mother also asserts that father's death three months before the hearing amounted to a change in circumstances that warranted providing her additional time in which to become fit. While the shooting was unquestionably traumatic for mother, the juvenile court considered its impact and found, with record support, that mother's lack of engagement started at the beginning of the case and thus "way predate[d]" the shooting. Moreover, mother did not

8

restart visits or provide proof of substance abuse treatment after her release from the hospital after the shooting.

¶ 21 Finally, as noted above, this was an EPP case and the child had been in foster care for the eighteen-month pendency of the case — nearly her entire life.

¶ 22 Based on this record, we conclude that the juvenile court did not clearly err by finding that mother was unlikely to become fit within a reasonable time. *See S.Z.S.* ¶ 29, 524 P.3d at 1217 (appellate court will not disturb the juvenile court's finding that a parent could not become fit within a reasonable time when the record supports it).

IV. Disposition

¶ 23 The judgment is affirmed.

JUDGE JOHNSON and JUDGE MOULTRIE concur.