25CA0375 Peo in Interest of ZS 07-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0375
Alamosa County District Court No. 23JV30015
Honorable Amanda C. Hopkins, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Z.S., a Child,

and Concerning E.V.F. and C.O.S.,

Appellants.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Lipinsky and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

---

Jason T. Kelly, County Attorney, Alamosa, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant E.V.F.

Robin Tieman, Office of Respondent Parent's Counsel, Boulder, Colorado, for Appellant C.O.S.

¶ 1     In this dependency and neglect proceeding, E.V.F. (mother) and C.O.S. (father) appeal the judgment terminating their parent-child legal relationships with Z.S. (the child).  Specifically, they challenge the juvenile court's determination that they were unlikely to become fit within a reasonable amount of time.  We affirm.

## I.     Background

¶ 2     Upon receiving notice that the child tested positive for methamphetamine and fentanyl at birth, the Alamosa County Department of Human Services filed a petition in dependency and neglect.  The Department cited concerns about the parents' substance use and lack of housing and stated that the parents admitted using methamphetamine.

¶ 3     The court adjudicated the child dependent or neglected and adopted treatment plans for the parents that required them to attend family time and, among other things, address their substance use.

¶ 4     Several months later, the Department moved to terminate the parents' parental rights and, following an evidentiary hearing, the court granted the motion.

1

## II. Termination Criteria and Standard of Review

¶ 5 A juvenile court may terminate a parent's rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 6 A juvenile court's judgment terminating parental rights presents a mixed question of fact and law involving the application of the termination statute to the evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. The credibility of witnesses and the sufficiency, probative value, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the juvenile court's discretion. *Id.* We review the juvenile court's factual findings for clear error and will set them aside only if they lack any support in the record. *Id.* at ¶¶ 15, 48; *see People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29. We review de novo the juvenile court's legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

2

### III. Fit Within a Reasonable Time

¶ 7 Both parents raise a single issue on appeal — they contend that the court erred by finding that they were unlikely to become fit within a reasonable time. We disagree.

### A. Applicable Law

¶ 8 An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting adequate to meet the child's physical, emotional, and mental needs and conditions. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006). A juvenile court can also consider a parent's noncompliance with a treatment plan in determining unfitness. *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 9 In determining whether a parent's conduct or condition is likely to change in a reasonable time and whether the parent can therefore become fit in a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of

3

the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003). The determination of a reasonable period is fact-specific and varies from case to case. *S.Z.S.*, ¶ 25.

¶ 10    When a child is under six years old, as in this case, the juvenile court must also consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024. In EPP cases, no parent shall be found to be in reasonable compliance with, or have been successful at, a treatment plan when the parent (1) has not attended family time as set forth in the treatment plan, unless good cause is shown for failing to attend, or (2) exhibits the same problems addressed in the treatment plan without adequate improvement. § 19-3-604(1)(c)(I).

## B.    Analysis

¶ 11    The court determined that the parents remained unfit and that their conduct or condition was unlikely to change within a reasonable period of time. The court based this determination of unfitness on, among other things, the parents' chronic use of

intoxicating controlled substances, *see* § 19-3-604(2)(e), and the termination of mother's parental rights in a prior case. In support of its determination that the parents' conduct or condition was unlikely to change within a reasonable time, the court found the parents "have suffered from substance use disorders for decades and, while they did experience brief periods of sobriety during this case, they are still unprepared to access and utilize the tools and other resources required to achieve the type of permanent change that this child requires now." The court also found that the parents had not stopped using illegal substances and did not understand the danger their addiction posed to the child. And the court found that the parents had missed family time without good cause and attended visits when they had "very recently used" substances.

¶ 12     The court noted that the EPP provisions applied to this case and indicated it was not presented with evidence showing that any further delay in permanency would serve the child's best interests.

¶ 13     The record supports the court's findings and shows:

- Mother struggled with methamphetamine, fentanyl, and heroin use for over twelve years. Father struggled with using

those same substances for two decades but was sober for a long time within that period.

- Most of the drug tests that the parents took during the first eleven months of the case were positive for some combination of methamphetamine, amphetamine, and fentanyl.

- Both parents admitted to using substances two and a half months before the termination hearing.

- Mother's hair follicle test taken three weeks after the hearing was positive for fentanyl and (at a low level) positive for methamphetamine. Father's hair follicle test taken the same day was positive for methamphetamine.

- The child tested positive for methamphetamine, amphetamine, and fentanyl after a visit with the parents. During a different visit, the caseworker observed mother slumped over.

- While the parents consistently attended family time at the beginning and end of the case, they missed numerous visits throughout the middle of the case.

- Neither parent would attend visits when one parent claimed illness or injury, and both parents admitted that withdrawals were one of the reasons for their absences.

- Mother's parental rights had been terminated as to two different children — one by relinquishment and one via court order terminating her parental rights.

- Father had relinquished his parental rights to two other children in a separate dependency and neglect case that involved allegations of substance use.

¶ 14    The caseworker opined that the parents were not fit and unlikely to become fit within a reasonable time because they had only demonstrated change within the three- or four-week period preceding the hearing even though the case had been open for a year.

¶ 15    Further, the child was a newborn when the case opened and was one year old at the time of the hearing. The caseworker opined that the young child needed a safe and stable home with sober caregivers who could provide for her basic needs. She further opined that the child would not be safe to go back into the parents' care because they had not addressed their substance use on a "long-term level."

¶ 16    In support of their contentions that the court erred, both parents point to their compliance with aspects of their treatment

plan. For instance, they cite their housing stability, bond with the child, and engagement in parenting classes and substance use treatment. Both parents specifically rely on their substance use treatment provider's testimony that they "ha[d] been marking things off their [substance use] treatment plans."

¶ 17 We first observe that the court "struggle[d] to find much credibility" in the treatment provider's testimony, characterizing her testimony as "illogical." Nonetheless, the court heard evidence of the parties' compliance with aspects of their treatment plan and their bond with the child. And based on that evidence, the court found that the parents were partially compliant with their treatment plan objectives and commended them for quickly securing and maintaining housing. But the court ultimately weighed the evidence of ongoing substance use during the case more heavily than the evidence of the parents' partial compliance with other aspects of the treatment plan. *See People in Interest of K.B.*, 2016 COA 21, ¶ 26 (noting that partial or even substantial compliance with a treatment plan does not necessarily render a parent fit); *D.L.C.*, 70 P.3d at 589 (providing that court may consider whether any change has occurred during the dependency and neglect case).

It is not our role to reweigh the evidence or substitute our judgment for that of the juvenile court. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62. And as noted, the court did not find good cause existed for the parents' absences from the required family time and thus could not find that they were in reasonable compliance with their treatment plans. *See* § 19-3-604(1)(c)(I)(A).

¶ 18 Father also asserts that he could have become fit had he been able to complete his substance use program and suggests the child was "not desperately needing permanency." But as the court indicated, the parents' substance use treatment provider testified that, even if the parents were fully compliant with all their treatment requirements, it would still take them about another year to complete treatment. And critically, the court determined that the young child required "permanent change . . . now." *See S.Z.S.*, ¶ 24 (providing that a reasonable time is not an indefinite time, and it must be determined by considering the child's physical, mental, and emotional conditions and needs).

¶ 19 Indeed, this EPP case had been open over a year by the time the court issued its oral ruling. The child was placed in foster care for the duration of the case. Consequently, the court was required

9

to permanently place the child as expeditiously as possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c). And notably, our legislature established the EPP provisions because it recognized that "children undergo a critical bonding and attachment process prior to the time they reach six years of age" and that "a child who has not bonded with a primary adult during this critical stage will suffer significant emotional damage" that frequently leads to future chronic psychological problems and antisocial behavior. § 19-1-102(1.6). Accordingly, we are not persuaded by father's assertions.

¶ 20    Because the record supports the court's determination that the parents were unlikely to become fit within a reasonable time, we decline to disturb the judgment. *See S.Z.S.*, ¶ 29 (appellate court will not disturb the juvenile court's finding that a parent could not become fit within a reasonable time when the record supports it).

## IV.    Disposition

¶ 21    The judgment is affirmed.

JUDGE LIPINSKY and JUDGE LUM concur.

10