25CA0626 Peo in Interest of SRH 09-18-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0626
Montrose County District Court No. 23JV30015
Honorable D. Cory Jackson, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of S.R.H., a Child,

and Concerning A.G.,

Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE MOULTRIE
J. Jones and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

---

Julie R. Andress, County Attorney, Montrose, Colorado, for Appellee

Alison A. Bettenberg, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1     A.G. (mother) appeals the judgment terminating her parent-child legal relationship with S.R.H. (the child).  We affirm.

## I.     Background

¶ 2     The Montrose County Department of Human Services filed a petition in dependency and neglect based on concerns about mother's mental health and substance abuse.  The child was placed with maternal uncle, where she remained for the duration of the case.

¶ 3     The juvenile court adjudicated the child dependent and neglected as to mother by admission and adopted a treatment plan.

¶ 4     Mother's treatment plan required her to (1) communicate with the Department; (2) attend family time; (3) address her substance dependence; (4) maintain stable and safe housing; and (5) participate in a mental health assessment and follow all recommendations.

¶ 5     Approximately one year after adoption of the treatment plan, the Department moved to terminate mother's parental rights.  Eight months later, after hearing the evidence, the juvenile court terminated the parent-child legal relationship.

## II.    Fitness Within a Reasonable Time

¶ 6    Mother asserts that the juvenile court erred by finding that she was unfit and unlikely to become fit within a reasonable time. We disagree.

### A.    Standard of Review and Applicable Law

¶ 7    Whether the court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. The juvenile court, as trier of fact, determines the credibility of witnesses; sufficiency, probative value, and weight of the evidence; and the inferences and conclusions to be drawn from the evidence. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error and accept them if they have record support, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

¶ 8    To terminate a parent-child legal relationship under section 19-3-604(1)(c), C.R.S. 2025, the juvenile court must find, among other things, that (1) the parent is unfit and (2) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c)(II), (III).

¶ 9     A parent is unfit if her conduct or condition renders her unable or unwilling to give her child reasonable parental care. *People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting adequate to meet the child's physical, emotional, and mental health needs and conditions. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).

¶ 10     When deciding whether a parent's conduct or condition is likely to change within a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003). What constitutes a reasonable time is fact-specific and varies from case to case. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007).

## B.     Analysis

¶ 11     Mother argues that she made significant progress, was engaged in treatment, was sober, and "was putting in the work and making plans" to become fit within a reasonable time. The juvenile court acknowledged that mother was voluntarily participating in

inpatient treatment, but found that she engaged "very, very late in this case" and that she only started engaging in treatment "because she was incarcerated." *See People in Interest of V.W.*, 958 P.2d 1132, 1134-35 (Colo. App. 1998) (noting that even "increased compliance" over the course of a case may not justify more time). The court also found that mother had a significant history of substance abuse and concluded that she had failed to comply with the substance abuse component of her treatment plan.

¶ 12 The record supports the court's findings. Mother testified that she was forty years old at the time of the termination hearing and had used various substances since her early teenage years. The caseworker testified that mother had a "longstanding history and pattern of abuse" and that it would take "a lot of work" to establish sobriety. Mother's treatment plan required her to complete a substance abuse evaluation, follow the evaluation's treatment recommendations, cooperate with random drug testing, and maintain sobriety. Although the substance abuse evaluation completed early in the case recommended residential treatment, mother testified that she began residential treatment only sixteen days before the termination hearing. By then, the case had been

open for nearly two years. And the record suggests that mother completed only three drug tests, all of which were positive for fentanyl and two of which were positive for methamphetamine. The caseworker testified that mother last submitted to testing a year and a half before the termination hearing. The caseworker opined that mother failed to establish a pattern of sobriety and didn't successfully complete the substance abuse component of her treatment plan. Mother testified that she had only been substance free for about seven weeks at the time of the termination hearing.

¶ 13 Mother's opening brief doesn't address her level of engagement with the remaining components of her treatment plan. But the juvenile court found that mother didn't maintain consistent contact with the caseworker, last engaged in family time six months before termination, was homeless before inpatient treatment, failed to engage in mental health services, and therefore failed to complete her treatment plan. *See People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008) (because a parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs," it can be considered in determining parental fitness).

¶ 14    The record supports the court's findings.  The caseworker testified that it was difficult to get mother to engage and that she hadn't substantially complied with any objective of her treatment plan.  Mother didn't stay in consistent contact with the Department because her phones were turned off, lost, or stolen, and she didn't sign necessary releases of information for mental health services, follow up with providers, or attend family engagement meetings.  Mother testified that she was homeless for approximately two months before she was arrested for violating a protection order.  She then spent over one month in jail before transferring to inpatient treatment, where she remained.  Additionally, the caseworker testified that mother had "quite a few [unresolved] criminal cases" at the time of termination.

¶ 15    The family time supervisor testified that mother missed nearly half of her scheduled family time sessions, and she hadn't attended any family time sessions at the supervision facility during the nine months before the termination hearing.  The supervisor scheduled three re-engagement meetings for mother, but "all three were no-shows."  The caseworker supervised one additional family time session in the community approximately two months later but

thereafter visits stopped because it was difficult to contact mother. The caseworker testified that as the case progressed, family time "triggered" the child because she felt like her parents were "choosing drugs over her" and "it became quite an emotional ordeal for her to go to visits."

¶ 16    Based on mother's noncompliance with her treatment plan, the juvenile court concluded that mother was unfit and that her conduct or condition was unlikely to change within a reasonable time.  The court recognized that the case had been open for nearly two years and that mother's "recent engagement has to be balanced against the child's need for permanency."  *See People in Interest of K.T.*, 129 P.3d 1080, 1081 (Colo. App. 2005) (in considering a parent's fitness, the court must consider the specific physical, emotional, and mental health needs of the child).

¶ 17    Mother testified that she had approximately thirty more days of inpatient treatment to complete.  But the caseworker testified that completing the program was insufficient to successfully complete the substance abuse component of the treatment plan; given mother's longstanding history of substance abuse, she needed to establish at least six months of sobriety after discharge before it

would be safe to return the child to mother.  The caseworker opined that mother's conduct or condition wouldn't likely change within a reasonable time because there hadn't been any engagement until the very end of the case or any "demonstrated pattern of a change in behavior."  And the caseworker testified that remaining "in limbo even longer" was "unbearable for [the child]" and that termination was the best option for the child.

¶ 18　　In determining that mother couldn't become fit within a reasonable time, the juvenile court properly considered the lack of progress made during the case, the long-term nature of mother's conduct, and the child's needs.  And because the record supports the court's findings, we won't disturb them.  *See A.M.*, ¶ 15.

### III.　Disposition

¶ 19　　The judgment is affirmed.

JUDGE J. JONES and JUDGE KUHN concur.