25CA0740 Peo in Interest of ZRG 09-25-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0740
City and County of Denver Juvenile Court No. 23JV30750
Honorable Elizabeth McCarthy, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Z.R.G., a Child,

and Concerning L.L.M. and Z.R.G.,

Appellants.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE BROWN
Fox and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 25, 2025

---

Michiko Ando Brown, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant L.L.M.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant Z.R.G.

¶ 1     Z.R.G. (father) and L.L.M. (mother) appeal the judgment terminating their parent-child legal relationships with Z.R.G. (the child).  We affirm.

## I.     Background

¶ 2     In September 2023, the Denver Department of Human Services received a report that mother had given birth to a substance-exposed child.  Mother also tested positive for methamphetamine and admitted that she had used illicit drugs a few days before the child's birth.  Based on this information, the Department removed the child and filed a petition in dependency or neglect.  The Department also alleged that father had a history of substance abuse and domestic violence with mother.

¶ 3     The parents admitted the allegations in the petition, and the juvenile court adjudicated the child dependent or neglected.  After dispositional hearings, the court adopted treatment plans for the parents.  Mother's treatment plan required her to address her substance abuse and mental health issues and participate in family time, while father's plan required that he address his substance abuse, attend family time, and refrain from further criminal activity.

1

¶ 4　　In January 2025, the Department moved to terminate the parents' parental rights.  The juvenile court held an evidentiary hearing the following March.  After hearing the evidence, the court granted the Department's motion and terminated the parent-child legal relationships between the parents and the child.

## II.　Father's Appeal

¶ 5　　Father contends that the juvenile court erred by terminating his parental rights because (1) he could become fit within a reasonable time, and (2) termination was not in the child's best interests.  We disagree.

### A.　Applicable Law and Standard of Review

¶ 6　　The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.  In addition to the statutory criteria, the court must also consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986).  The

2

court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3); *People in Interest of K.B.*, 2016 COA 21, ¶ 38.

¶ 7     When deciding whether a parent can become fit within a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003). What constitutes a reasonable time is fact-specific and varies from case to case. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007).

¶ 8     Whether the juvenile court properly terminated parental rights under section 19-3-604 is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

## B.    Analysis

¶ 9     The juvenile court found that the Department had proved the termination criteria in section 19-3-604(1)(c) by clear and

convincing evidence. Specifically, the court found that father did not successfully participate in monitored sobriety, substance abuse treatment, individual therapy, or family time. Because father had not addressed any of the issues in the case, the court determined that he was unfit. *See People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008) (a parent's noncompliance with treatment can be considered in determining unfitness). And based on the length of the case, father's lack of progress during that time, and his unwillingness to participate in treatment, the court concluded that father could not become fit within a reasonable time. *See D.L.C.*, 70 P.3d at 588-89.

¶ 10    The juvenile court also found that there was no less drastic alternative to termination and that termination and adoption was in the child's best interests. The court noted that the child "thrives on consistency," and while the kinship placement could "give him permanency and stability," father could not. Therefore, the court found that it was in the child's best interests "to have the permanency that only adoption [could] provide."

¶ 11    The record supports the juvenile court's findings. The caseworker testified that after father was released from the county

jail in August 2024, he completed a substance abuse evaluation but did not participate in substance abuse treatment or individual therapy. Father provided only three drug screens during the case, all of which were positive for tetrahydrocannabinol. The caseworker testified that father was unlikely to make any progress because he "doesn't believe he needs treatment."

¶ 12 The record also shows that father did not adequately participate in family time. When father attended family time, the family time supervisor reported that the visits went well. But the supervisor said that father stopped attending consistently in December 2024, and she observed negative changes in the child because of father's inconsistency.

¶ 13 The caseworker opined that termination was in the child's best interests. She said that the child needed a safe and sober caregiver that could provide him with consistency because he "thrives" on routine. The caseworker also said that the child was in a kinship home that wanted to adopt him and that met his need for stability. Finally, the caseworker noted that adoption would give the child the consistency and permanency that he needed.

¶ 14    Father asserts that the juvenile court erred by terminating his parental rights because the evidence established that he made "significant progress in treatment" and had "a positive and loving bonded relationship with the child." But as described above, the record shows that father made very little progress on his treatment plan after he was released from jail. *See People in Interest of V.W.*, 958 P.2d 1132, 1134-35 (Colo. App. 1998) (noting that even "increased compliance" over the course of a case may not justify additional time). And although the evidence shows that father had a bond with the child, *see D.P.*, 181 P.3d at 408-09, the court weighed this evidence against other evidence showing that father had not addressed the issues in this case and that the child needed stability and permanency that father could not provide, *see People in Interest of A.R.*, 2012 COA 195M, ¶ 38 (noting that the court "may consider various factors" in determining whether termination is in the child's best interests). Ultimately, we must reject father's argument because it would require us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we cannot do. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29.

¶ 15    Finally, father asserts that the juvenile court erred because the Department did not present any evidence "to show what impact termination of parental rights would have on the child." Although a court must always consider the child's best interests, *K.D. v. People*, 139 P.3d 695, 701 (Colo. 2006) (noting that the "primary and controlling issue" in a termination proceeding is the child's best interests), nothing in section 19-3-604(1)(c) requires the Department to present evidence of the impact of termination on the child. Nor has father directed us to any case law to support his position.

¶ 16    In this case, the Department presented evidence that father was an unfit parent who could not become fit within a reasonable time and that there were no less drastic alternatives to termination that would serve the child's best interests. In turn, the juvenile court considered the child's best interests in finding that the Department had proved the statutory criteria for termination by clear and convincing evidence and that there were no less drastic alternatives to termination. We therefore discern no error.

### III. Mother's Appeal

### A. ICWA Due Diligence

¶ 17    Mother asserts that the Department failed to comply with Colorado's Indian Child Welfare Act (ICWA), § 19-1-126, C.R.S. 2024.[1] We disagree.

### 1. Applicable Law and Standard of Review

¶ 18    In a dependency or neglect proceeding in Colorado, a juvenile court must inquire of the parties whether they know or have reason to know that a child is an Indian child. § 19-1-126(1)(a)(I)(A). "Indian child" is defined as an unmarried person under the age of eighteen who is (1) a member of an Indian tribe or (2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. § 19-1-103(83), C.R.S. 2024[2]; 25 U.S.C. § 1903(4) (defining "Indian child" for purposes of the federal ICWA). If the court knows or has reason to know that a child involved in the proceeding is an Indian child, ICWA's notice provisions apply. § 19-1-126(1)(b).

---

[1] Because the 2024 version of the statute was in effect during the relevant proceedings, we cite that version throughout.
[2] We also cite the 2024 version of this statute throughout.

¶ 19 "[M]ere assertions of a child's Indian heritage (including those that specify a tribe or multiple tribes by name) without more, are not enough to give a juvenile court reason to know that the child is an Indian child." *People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42, ¶ 56; *see also* § 19-1-126(1)(a)(II) (listing factors for a court to consider when determining whether there is reason to know that a child is an Indian child). But a general assertion of Indian heritage does trigger the due diligence requirements in section 19-1-126(3) of Colorado's ICWA statute. *H.J.B. v. People in Interest of A-J.A.B.*, 2023 CO 48, ¶ 5. Specifically, section 19-1-126(3) requires the juvenile court to direct the department to "exercise due diligence in gathering additional information that would assist the court in determining whether there is reason to know that the child is an Indian child."

¶ 20 In *H.J.B.*, our supreme court concluded that due diligence is a "flexible standard" that generally requires a department to do three things: (1) "earnestly endeavor to investigate the basis for the parent or other participant's assertion that the child may be an Indian child"; (2) "contact those family members or others who are specifically identified as having knowledge regarding that assertion

of general Indian heritage"; and (3) "learn whether additional information exists that will help the court determine whether there is a reason to know that the child is an Indian child." *H.J.B.*, ¶ 57. Due diligence does not require the department to "succeed in its efforts" or "exhaust every possible option in attempting to do so." *Id.* at ¶ 58.

¶ 21 "Whether the department has satisfied its due diligence obligation in any case will ultimately be left to the sound discretion of the juvenile court, which necessarily requires the court to make credibility determinations regarding the source of the information and the basis for the source's knowledge." *Id.*

### 2. Analysis

¶ 22 We conclude that the juvenile court did not abuse its discretion by finding that the Department exercised due diligence in gathering additional information that would assist it in determining whether there was reason to know that the child is an Indian child.

¶ 23 At the initial shelter hearing, mother's counsel indicated that mother may have Cherokee and "Chinowa" heritage. The juvenile court found there was no reason to know that the child was an

10

Indian child but that the Department should exercise due diligence under section 19-1-126(3).

¶ 24    A few months later, the Department filed an affidavit from the caseworker detailing her efforts to investigate mother's claim of Native American heritage. In the affidavit, the caseworker averred that she had contacted or attempted to contact several family members, including maternal great-grandmother, two maternal great-aunts, maternal grandmother and grandfather, maternal aunt and maternal uncle. For the most part, the relatives told the caseworker that they did not have any Native American heritage. However, one of the maternal great-aunt's said that her mother, who passed away a few years earlier, might have Native American heritage. The maternal great-aunt said that she did not know anyone in the family that might have additional information.

¶ 25    Following the dispositional hearing about one month later, the juvenile court found that there was no reason to know that the child was an Indian child under ICWA. Between the dispositional hearing and the termination hearing, the court did not receive additional information. And at the termination hearing, the court found that the Department had exercised due diligence under

11

section 19-1-126(3), there was no reason to know that the child was an Indian child, and ICWA did not apply.

¶ 26     The record supports the juvenile court's finding that the Department exercised due diligence under section 19-1-126(3).  The Department had information from a previous case, which revealed the basis for mother's assertion of Native American heritage.  *See H.J.B.*, ¶ 57.  In that case, the caseworker spoke with mother's sister, who said that she and mother had grown up thinking that they were Cherokee because they had pictures of their grandparents "who appeared to be Native American."  But mother's sister told the caseworker that she and her father had taken genetic tests that revealed no Native American heritage.  The caseworker also spoke with mother's paternal aunt who said that she too had done genetic testing that revealed no Native American heritage and that she was unaware of any other relative with such heritage.  The Department filed this information with the juvenile court in this case.

¶ 27     The Department also spoke with mother's relatives during the pendency of this case but did not learn of any Native American heritage.  *See id.*  Indeed, all but one relative unequivocally denied

12

having such heritage. The only person who did not — a maternal great-aunt — was "unsure" whether she might have Native American heritage and said that the only person that might have additional information was deceased.

¶ 28    On appeal, mother asserts that the Department failed to exercise due diligence because it did not attempt to contact tribes. But as our supreme court concluded in *H.J.B.*, a department need not contact tribes to satisfy the due diligence requirement. *See id.* at ¶ 54 ("[T]he General Assembly could have required contact with tribes in section 19-1-126(3), and it is significant that it did not."). On this record, we perceive no abuse of discretion in the juvenile court's conclusion that the Department exercised due diligence under section 19-1-126(3).

## B.    Reasonable Efforts

¶ 29    Mother argues that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her and reunify her with the child. We disagree.

### 1.    Applicable Law and Standard of Review

¶ 30    In deciding whether to terminate parental rights, the juvenile court must consider whether the department made reasonable

efforts to rehabilitate the parent and reunite the parent with the child. *See* §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2025. The reasonable efforts standard is satisfied if the department provides appropriate services in accordance with section 19-3-208. § 19-1-103(114). These services may include (1) screening, assessments, and individual case plans; (2) home-based family and crisis counseling; (3) information and referral services; (4) family time; and (5) placement services. § 19-3-208(2)(b).

¶ 31     The services must be "appropriate to support the parent's treatment plan," *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), but the parent is responsible for using those services to obtain the assistance needed to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). The juvenile court should consider the totality of the circumstances and account for all services and resources provided to a parent, measuring them holistically rather than in isolation with respect to specific treatment plan objectives. *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶¶ 33, 35.

¶ 32     Whether a department satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in*

*Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error and review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. *Id.*

### 2. Analysis

¶ 33    The juvenile court found that the Department made reasonable efforts to provide mother with substance abuse and mental health services, but mother did not participate in those services to become a fit parent. The record supports the court's findings. The caseworker explained that mother had completed a dual diagnosis evaluation in a previous case, so she referred mother for an "addendum" to the previous evaluation. The evaluator recommended that mother complete intensive outpatient treatment. Initially, mother told the caseworker that she would find her own treatment provider; mother identified three different providers, but she did not engage in treatment with any of them. At that point, the caseworker referred mother to one of its approved providers. The caseworker said that mother completed the intake but never engaged in treatment.

15

¶ 34    Despite this record, mother contends that the Department failed to make reasonable efforts because it did not refer her to substance abuse or mental health treatment until over a year into the case. We reject her assertion because the record shows that this delay occurred because mother wanted to choose her provider.

¶ 35    Mother also asserts that the Department failed to make reasonable efforts because it did not refer her to inpatient treatment. Although the record shows that mother told the caseworker that she was going to enroll in an inpatient treatment facility (which she never did), mother never asked the caseworker to make a referral. And mother's evaluation recommended outpatient treatment, not inpatient treatment. We therefore cannot say that the Department failed to make reasonable efforts in this area.

¶ 36    Finally, mother submits that the Department did not provide her with housing resources. Mother testified that the Department did not give her any resources for housing, except a list of shelters. That said, mother indicated that she had found resources and acquired housing, which she had been in for over a year. We reject mother's assertion because (1) the Department provided her with some housing resources; (2) section 19-3-208 does not explicitly

16

require the Department to provide a parent with anything more; (3) mother acquired stable housing without the Department's assistance; and (4) the juvenile court credited mother for having stable housing.

¶ 37    We conclude that the juvenile court did not err by finding that the Department made reasonable efforts to rehabilitate mother and reunify her with the child.

## IV.    Disposition

¶ 38    The judgment is affirmed.

JUDGE FOX and JUDGE MEIRINK concur.