26CA0105 Peo in Interest of GJ 06-25-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0105
City and County of Denver Juvenile Court No. 24JV30800
Honorable Michael A. O'Hara III, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of G.J., a Child,

and Concerning A.M.R. and J.T.J.,

Appellants.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE BROWN
Harris and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 25, 2025

---

Miko Brown, City Attorney, Amy Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Ainsley Baum, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant A.M.R.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant J.T.J.

¶ 1    In this dependency or neglect proceeding, J.T.J. (father) and A.M.R. (mother) appeal the judgment terminating their parent-child legal relationships with G.J. (the child).  We affirm.

## I.    Background

¶ 2    The City and County of Denver Department of Human Services filed a petition alleging that the parents, who were homeless, were unable to provide the newborn child with safe care due to substance use and mental health issues.  Mother and father admitted the petition, and the court adjudicated the child dependent and neglected.  The child, initially placed in foster care for a month, was moved to the care of paternal uncle for the remainder of the case.

¶ 3    The court adopted treatment plans for each parent.  As relevant here, mother was required to: (1) complete a substance abuse evaluation and follow any recommendations; (2) comply with urinalysis testing; (3) engage in parenting classes and attend all family time with the child; (4) maintain a working relationship with case professionals; (5) locate and maintain safe housing for herself and the child; and (6) seek out mental health treatment and follow all recommendations.  Seven months later, after the parents

physically fought in front of the child during family time, the Department added an objective that mother participate in healthy relationships classes.

¶ 4    The Department filed a motion to terminate each parent's parental rights, asserting that neither parent had complied with their treatment plan.  The court granted the Department's motion.

## II.    Father's Argument

¶ 5    Father argues that the juvenile court erred by terminating his parental rights when an allocation of parental responsibilities (APR) to paternal uncle would have been in the child's best interests.  We disagree.

### A.    Applicable Law and Standard of Review

¶ 6    Before terminating parental rights under section 19-3-604(1)(c), C.R.S. 2025, the juvenile court must consider and eliminate less drastic alternatives.  *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986).  In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3).  The court may also consider other factors, including whether permanent placement with a relative provides adequate

2

permanence and stability for the child, *People in Interest of T.E.M.*, 124 P.3d 905, 910-11 (Colo. App. 2005), and whether the placement provider prefers adoption over an APR, *People in Interest of Z.M.*, 2020 COA 3M, ¶ 31 (citing *People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011)).

¶ 7    Long-term or permanent placement with a family member, short of termination, may not be a viable less drastic alternative if it does not provide adequate permanence that adoption would provide or it otherwise does not meet a child's needs. *People in Interest of A.R.*, 2012 COA 195M, ¶ 41. But a viable less drastic alternative must do more than adequately meet a child's needs; rather, it must be in the child's best interests. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27. Therefore, if the juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. And we must affirm the juvenile court's decision if its findings are supported by the record. *See People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B.    Analysis

¶ 8    The juvenile court found that there were no viable less drastic alternatives to termination of parental rights in this case.  And it found that "it is in the child's best interest to have the permanency that only adoption [could] provide."  In reaching this conclusion, the court explicitly gave primary consideration to the physical, mental, and emotional conditions and needs of the child.  It considered the child's young age and whether permanent placement with a relative provided adequate stability for the child.

¶ 9    The court's findings are supported by the record.  Testimony indicated that the child had spent all but the first of his fourteen months of life in paternal uncle's care and was well cared for.  The child had "an appropriate bond" with his paternal uncle's partner and children — the child's cousins.  A caseworker testified that the child growing up with his cousins, who were close to his age, was in the child's best interest.  And she opined that termination of parental rights and adoption by paternal uncle was in the child's best interests.

¶ 10    Moreover, the record includes testimony that paternal uncle disfavored an APR to the parents and that he and his partner

wished to adopt the child. The record indicates that paternal uncle and his partner did not want an APR because they worried about being able to timely locate the parents for consent in case of a medical emergency. They also worried about the potential disruption that an APR would bring — specifically, having to return to court regarding custody arrangements in the future. And they had concerns about the volatility between the parents that they had witnessed when they supervised family time.

¶ 11    While father asserts that his positive relationship with the child was undisputed, the court found that the parents' visitation record suggested otherwise. This finding, too, has record support. Mother and father were not fully compliant with family time. True, their consistency had improved in the months before the termination hearing, when family time was offered within walking distance of where they were residing. But earlier in the case, they sometimes did not attend or arrived "many, many hours late" to parenting time.

¶ 12    Given this record evidence, which supports the court's determination regarding less drastic alternatives, we perceive no basis for reversal. *See B.H.*, ¶ 80.

### III. Mother's Argument

¶ 13    Mother argues that there was a less drastic alternative in the form of extending the case and giving her more time. We disagree that this proposed resolution is properly characterized as a less drastic alternative to termination. As we have already discussed, the less drastic alternative analysis turns on whether there is a permanent or long-term placement arrangement — such as an APR — that would conclude the dependency or neglect proceeding without terminating parental rights. However, rather than rejecting mother's argument outright, we opt to construe it as a challenge to whether the court erred by finding that her conduct or condition was unlikely to change within a reasonable time. *See* § 19-3-604(1)(c)(III); *cf. B.H.*, ¶ 79 (construing father's purported reasonable efforts challenge as an assertion that there were less drastic alternatives "rather than reject[ing] father's argument outright").

### A. Standard of Review and Applicable Law

¶ 14    Whether the juvenile court properly terminated parental rights under section 19-3-604 is a mixed question of fact and law. *A.M.*, ¶ 15. We review the court's factual findings for clear error, but we

6

review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

¶ 15    If a parent has made little to no progress on a treatment plan, the court is not required to allow the parent additional time to comply. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 23. When deciding whether a parent can become fit within a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003). When, as here, a child is under six years old, the court must consider the expedited permanency planning provisions, which require that the child be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025.

## B.    Analysis

¶ 16    The juvenile court found that mother was unfit and unlikely to become fit within a reasonable time. It found that she had a history of substance abuse and mental health issues. She had not complied with any substance abuse or mental health treatment, and her "condition[] in this regard remain[ed] unchanged."

¶ 17    To be sure, mother experienced some success with her treatment plan. For example, her ability to meet the child's needs during parenting time improved over the course of the case. Mother also maintained a "very positive working relationship overall with the Department." Nevertheless, the record supports the court's findings regarding mother's persistent substance abuse and mental health issues.

¶ 18    Mother completed a substance use evaluation and an intake appointment, but she did not engage in treatment. She only infrequently completed urinalysis testing, and her drug tests were positive. A caseworker testified that even after the case had been open for more than a year, mother lacked an "understanding of how substance use while parenting can negatively impact children."

¶ 19    Regarding mother's mental health, a casework supervisor testified that, throughout the case, mother's mood fluctuations "cause[d] an unsafe environment." For example, mother "punched [father] in the face [during family time] because of an escalated verbal argument that turned physical." But mother did not engage in mental health treatment or healthy relationships classes.

¶ 20    Moreover, the court heard testimony that, given the length of time the case had been open, mother was unlikely to reunify with the child within a reasonable time.

¶ 21    Given the court's reliance on the appropriate law and the record evidence supporting its finding that mother could not become fit within a reasonable time, we discern no error.

## IV.   Disposition

¶ 22    The judgment is affirmed.

JUDGE HARRIS and JUDGE TOW concur.